WEIMER, J.,
dissenting.
IH respectfully dissent from the denial of rehearing.
As the respondent attorney pointed out in her rehearing application, it is stated in the original opinion that an “objective standard” was applied for evaluating whether the attorney’s speech is protected by the First Amendment to the United States Constitution and Article 1, § 7 of the Louisiana Constitution. Notwithstanding that claim,[1] the resort to “ordinary experience” in evaluating the tape-splicing incident reveals that subjective views were imposed regarding what prompted the need to splice the courtroom recording. Extrapolating from its view of “ordinary experience,” the opinion then indicates that the attorney should be sanctioned for how she characterized what transpired,
The attorney’s application for rehearing appropriately emphasizes unrefuted testimony revealing that what the attorney encountered in,trying to produce a record of what transpired in open court was far from ordinary. In the opinion, it is dismissively stated that, based on “ordinary experience” and because recording, equipment can malfunction, the respondent should not haye suggested there was anything inappropriate in the court reporter’s production of a spliced recording. Overlooked is the fact that the court reporter had been ordered to produce to the attorney a duplicate'of the official court record and that there were actually three such records generated by three redundant devices during the district' judge’s hearing. A malfunction may explain why one record was incomplete. ’ But neither “ordinary | ^experience” nor the actual evidence in this case can dispel objectively reasonable suspicion of the court reporter’s explanation as to why it was necessary to provide the attorney with a spliced recording. According to the opinion, splicing was required because all three recording devices failed to generate a -completé recording at the exact time that the district judge was said to have made a disclosure of the extent of her dealings with a- litigant. The odds of all three redundant systems mal *707 functioning simultaneously during the district judge’s disclosure defies belief and “ordinary experience.”
The “ordinary experience” test results in a disregard of highly probative evidence showing how these circumstances unfolded and were actually viewed by those closest to the situation. Tellingly, when asked to comment on why spliced recordings were made instead of a duplicate recording, the technician employed by the court reporter to splice the recordings testified: “I mean I could reason that some would conclude that possibly something nefarious could have happened.”
Indeed, objective evidence which could raise concerns occurred during what should have been a routine request for a public record. When respondent inquired as to' why a spliced recording was given to her, she was first told that splicing was made' to redact other hearings That day. However; after being shown the court minutes for that day which revealed no other hearings, the district judge retracted that explanation. The other explanation for splicing was given by the technician, who testified: “To me the reason was [the court reporter] did not have the whole recording on one media.”
Based on the latter explanation, the opinion then speculates that the reason the court reporter did not have á full copy from any of the 'three recording devices was that a malfunction had occurred. However, prior to having the technician splice the ^recordings, the court reporter did not indicate that a malfunction had occurred. Instead, the court reporter testified that she was bringing the backup recordings to the technician because “[y]ou wouldn’t be able to hear them [the recordings from the primary device] without the [recording software] program being on your computer.” Moreover, the court reporter testified that she had “an appointment to have it copied.” (Emphasis added.) Thé reporter did not testify that she would ask the technician to splice recordings, let alone identify that there was a need to do so because of any malfunction. Not only did the court reporter not identify a reason for splicing what she represented to be duplicative/redundant recordings, but also splicing from various sources departed from a court order specifically directing “two (2) duplicate copies of 'the original audio recordings” be provided to the respondent attorney. (Emphasis ádd-ed.)
In conclusion, after reviewing the attorney’s application for rehearing, I reiterate that “ordinary experience” establishes there was an objective, factual basis for the attorney to have made allegations of irregularity in the judicial proceedings. The' original opinion in this matter has created a dilemma that can only be resolved by an having an attorney surrender constitutionally protected rights to free speech and compromise a client’s representation.
JOHNSON, C.J., additionally concurs in the denial of. the rehearing for. ¡the reasons assigned by KNOLL, J.
CLARK, J., additionally concurs in the denial of the rehearing for the reasons assigned by Justice KNOLL.